CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED
2017 SEP 12 PM 4:46
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| STEVEN MIKE OSBORN, | § § | |
| Plaintiff, | § § | |
| v. | § | 2:16-CV-67 |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | § § § § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION
## TO REVERSE THE DECISION OF THE COMMISSIONER
## AND REMAND FOR FURTHER PROCEEDINGS

Plaintiff STEVEN MIKE OSBORN brings this cause of action pursuant to 42 U.S.C. § 405(g), seeking review of a final decision of defendant NANCY A. BERRYHILL, Acting Commissioner of Social Security (Commissioner), denying plaintiff's application for disability insurance benefits (DIB).

The determination of plaintiff's Residual Functional Capacity (RFC), which formed the basis of the hypothetical to the Vocational Expert (VE), was flawed, rendering the expert opinion of the VE unreliable. It is not clear from the RFC exactly what specific limitations are required to be accommodated and whether the requirement that plaintiff have access to a bathroom at work was a sufficient accommodation for plaintiff's impairment which would render him not disabled.

The undersigned United States Magistrate Judge recommends the Commissioner's

SS\R&R\OSBORN-67:2

decision finding plaintiff not disabled and not entitled to benefits be REVERSED AND THAT THE CASE BE REMANDED.

I.
## THE RECORD

Plaintiff filed an application for DIB in August 2012, alleging a disability onset date of July 27, 2012. (Tr. 42, 110, 124). Plaintiff's claim was denied initially and on rehearing. Plaintiff requested an administrative hearing, which was held September 19, 2014. (Tr. 37-55, 70-71). The ALJ issued an unfavorable decision on April 4, 2014, finding plaintiff not disabled. (Tr. 11-26). The ALJ found plaintiff had the following severe impairments: ulcerative colitis and chronic obstructive pulmonary disease (COPD). (Tr. 16). He determined none of plaintiff's impairments met or equaled the severity of a listed impairment. (Tr. 17). The ALJ next evaluated plaintiff's RFC, reaching the conclusion he was able to perform light work with the following limitations: plaintiff could occasionally lift and carry 20 pounds; frequently lift and carry 10 pounds; could stand and/or walk for at least six hours in an eight-hour workday; could sit at least six hours in an eight-hour workday, but could not perform the full range of light work because he must have access to a restroom at work due to frequent bowel movements; and should avoid concentrated exposure to things like dusts and fumes. (Tr. 17). The ALJ found claimant could not return to his past relevant work but considering the claimant's age, education, work experience, and RFC, found there were jobs that existed in significant numbers in the national economy that the claimant can perform. (Tr. 20-25). Specifically, the ALJ noted plaintiff could perform the requirements of occupations such as a mail room clerk or rental clerk. (*Id.*).

Upon the Appeals Council's denial of plaintiff's request for review on February 26, 2016,

the ALJ's determination that plaintiff was not under a disability during the relevant time period became the final decision of the Commissioner. (Tr. 1-6). Plaintiff now seeks judicial review of the denial of benefits pursuant to 42 U.S.C. § 405(g).

II.
## MEDICAL EVIDENCE

Plaintiff was seen by Sambasiva Marupudi, MD, for a number of years (over 25 years) for ulcerative colitis, which was diagnosed by colonoscopy on April 9, 1986. (Tr. 227-29). Additional colonoscopies were performed periodically. (Tr. 211-25). Notes dating through 2012, noted times of diarrhea or constipation and occasional complaints of rectal bleeding. (Tr. 194-210). In the last treatment note, on July 31, 2012, plaintiff noted abdominal cramps, rectum pain, several incidences of incontinence at work, and four to five bowel movements in the morning. (Tr. 194). It also noted he was trying to get on disability. (Id.).

James Bryan, M.D., first saw plaintiff on February 15, 2010. (Tr. 242-45). Plaintiff reported a normal appetite and had "normal/adequate" nutrition. (Id.). Plaintiff described an onset of acute upper respiratory symptoms occurring in a pattern for years. (Id.). Plaintiff described moderate symptoms, including nasal congestion, post nasal drainage, and sinus pain. (Id.). Dr. Bryan noted diagnoses of sinusitis, ulcerative colitis, hearing loss, and tobacco-use disorder. (Id.). Plaintiff was started on a Z-Pac, Omnaris (nasal spray), and Chantix.

On May 19, 2010, plaintiff was seen by Robert Stroud, M.D., for complaints of sinus headaches. (Tr. 189-92). Plaintiff weighed 212 pounds. (Id.). He was diagnosed with sensorineural hearing loss asymmetrical, deviated nasal septum, chronic rhinitis, and tinnitus. (Id.).

On January 27, 2012, plaintiff was seen by Dr. Bryan. (Tr. 235-37). He was encouraged to stop smoking and given another prescription for Chantix. (*Id.*). He was also diagnosed as overweight at 212 pounds and was counseled on the importance of a well-balanced diet and regular exercise. (*Id.*).

On July 31, 2012, Dr. Bryan noted a diagnosis of chronic obstructive pulmonary disease (COPD). (Tr. 232-33). Plaintiff had normal excursion with symmetric chest walls and quiet, even, and easy respiratory efforts with no use of accessory muscles, but decreased breath sounds in both lung fields were noted. (*Id.*). At this time, plaintiff weighed 186 pounds. (*Id.*).

On October 10, 2012, Dr. Bryan opined plaintiff was unable to work due to ulcerative colitis and would never be able to return to work. (Tr. 268).[1]

On November 6, 2012, a RFC assessment was performed by Amita Hedge, M.D. (Tr. 246-53). She found that plaintiff was able to occasionally lift or carry 20 pounds, frequently lift or carry 10 pounds, stand and/or walk for 6 hours in an 8-hour work day, sit with normal breaks for a total of 6 hours in an 8 hour workday, and no limitations in pushing and/or pulling. (*Id.*). She did not impose any limitations because of plaintiff's fecal incontinence even though she found plaintiff's allegations partially supported by the medical evidence.

On November 26, 2012, plaintiff presented with complaints of left lower quadrant pain, fecal incompetence, and fecal urgency. (Tr. 251-52). Plaintiff weighed 209 pounds at the time and stated he had lost 40 pounds over the last year. (*Id.*). There was also an entry that plaintiff experienced symptoms about once per week. (*Id.*). Dr. Marapudi noted that plaintiff's illness was stable, nonprogressive, and of moderate intensity. (*Id.*).

---

[1] The signature is not legible, however, the Exhibit Index shows the report to be Dr. Bryan's.

Plaintiff was treated by Dr. Bryan again on December 7, 2012. (Tr. 258–61). Plaintiff was still smoking and Dr. Bryan once again started him on Chantix. (*Id.*). His breath sounds were bronchial in both lung fields. (*Id.*). He weighed 211 pounds at that appointment and reported no abdominal pains, change in bowels, heartburn, nausea, or vomiting. (*Id.*).

On October 20, 2013, Dr. Marupudi completed a form indicating plaintiff had uncontrollable diarrhea and could only work for two hours per day. (Tr. 269-70). On January 27, 2014, Dr. Marupudi completed another form that stated plaintiff had not worked since July 7, 2012 and would never be able to return to work. (Tr. 272).

On June 19, 2014, Dr. Bryan completed another form stating plaintiff was permanently unable to work due to incontinence and ulcerative colitis. (Tr. 273). He also noted a diagnosis of COPD in the comments section. (*Id.*). At that time, plaintiff's body weight was 256. (*Id.*).

On February 26, 2013, a case assessment form was completed by Shabnam Rehman, M.D., who affirmed the RFC assessment conducted by Dr. Hedge on November 6, 2012. (Tr. 266).

### III.
### STANDARD OF REVIEW

In reviewing disability determinations by the Commissioner, this Court's role is limited to determining whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings, and whether any errors of law were made. *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989). Substantial evidence is "such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). To determine whether substantial evidence of disability exists, the following elements must be weighed: (1) objective

medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir. 1972)). If the Commissioner's findings are supported by substantial evidence, they are conclusive, and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Conflicts in the evidence are to be resolved by the Commissioner, not the courts, *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977), and only a "conspicuous absence of credible choices" or "no contrary medical evidence" will produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Stated differently, the level of review is not *de novo*. The fact that the ALJ *could* have found plaintiff to be disabled is not the issue. The ALJ did not do this, and the case comes to federal court with the issue being limited to whether there was substantial evidence to support the ALJ's decision.

IV.
## ISSUES

Plaintiff does not present specific issues in this appeal but generally argues the ALJ erred in two ways and contends such are grounds for reversal of the decision denying plaintiff Social Security benefits:

1. The ALJ incorrectly found that plaintiff's impairments did not meet or equal one of the listings of severe impairments.

2. The ALJ erred in his finding that plaintiff was not credible and he failed to properly consider the medical records of treating physicians.

# V.
# MERITS

### A. The ALJ correctly determined plaintiff's impairments did not meet or equal one of the listings of severe impairments.

Plaintiff alleges the ALJ incorrectly found plaintiff "does not have an impairment or combination of impairments which meets or equals any section of the listing of impairments." Plaintiff references the records from Dr. Marapudi and Dr. Bryan contending they show treatment for Inflammatory Bowel Disease and COPD, Listing 5.06 and 3.02, respectively. Plaintiff's contention that both doctors diagnosed these conditions is correct, but plaintiff has failed to make a showing how his impairments satisfy the requirements of the listings. Each listing has specified requirements beyond the mere diagnosis of and treatment for a listed condition. A plaintiff carries the burden of proof at this point (step three) in the five-step sequential process. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

Each of the impairments in the listings is defined by several specific medical signs, symptoms, or laboratory results. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). To satisfy a listing, a claimant must show that his impairment meets <u>all</u> of the required criteria. *Id.*[2] If only some of the criteria are met, regardless of the severity, a claimant does not qualify under the listing. *Id.* The severity of a listing "is depicted by the given set of findings and not by the degree of severity of any single medical finding – no matter to what extent that finding may exceed the listed value." *Id.* A claimant must present medical findings meeting or equal in severity to *each* of the criteria in the listing. *Id.*

---

[2] The listings allow a showing to be made on an alternative basis, *i.e.*, a claimant can show he meets one set of criteria or another set of criteria.

To satisfy listing 5.06 for inflammatory bowel disease (IBD), a plaintiff must show:

5.06 *Inflammatory bowel disease (IBD)* documented by endoscopy, biopsy, appropriate medically acceptable imaging, or operative findings with:

A. Obstruction of stenotic areas (not adhesions) in the small intestine or colon with proximal dilatation, confirmed by appropriate medically acceptable imaging or in surgery, requiring hospitalization for intestinal decompression or for surgery, and occurring on at least two occasions at least 60 days apart within a consecutive 6-month period;

OR

B. Two of the following despite continuing treatment as prescribed and occurring within the same consecutive 6-month period:

1. Anemia with hemoglobin of less than 10.0 g/dL, present on at least two evaluations at least 60 days apart; or

2. Serum albumin of 3.0 g/dL or less, present on at least two evaluations at least 60 days apart; or

3. Clinically documented tender abdominal mass palpable on physical examination with abdominal pain or cramping that is not completely controlled by prescribed narcotic medication, present on at least two evaluations at least 60 days apart; or

4. Perineal disease with a draining abscess or fistula, with pain that is not completely controlled by prescribed narcotic medication, present on at least two evaluations at least 60 days apart; or

5. Involuntary weight loss of at least 10 percent from baseline, as computed in pounds, kilograms, or BMI, present on at least two evaluations at least 60 days apart; or

6. Need for supplemental daily enteral nutrition via a gastrostomy or daily parenteral nutrition via a central venous catheter.

To satisfy listing 3.02 for chronic respiratory disorders, a plaintiff must show:

3.02 *Chronic respiratory disorders* due to any cause except CF [cystic fibrosis] (for CF, see 3.04) with A, B, C, or D . . .

There are then several tables and charts set out under A, B, and C which are not necessary to be replicated in this Report and Recommendation. Those charts set out specific pulmonary function breathing criteria which must be met. Plaintiff has not established that the administrative record contains any medical test results which meet the specific breathing criteria.

> OR
>
> D. Exacerbations or complications requiring three hospitalizations within a 12-month period and at least 30 days apart (the 12-month period must occur within the period we are considering in connection with your application or continuing disability review). Each hospitalization must last at least 48 hours, including hours in a hospital emergency department immediately before the hospitalization.

In determining that plaintiff's impairments failed to meet or medically equal the severity of the listed impairments, the ALJ specifically cited Listing 5.06 and 3.02. (Tr. 17). He noted plaintiff's treatment with Dr. Marapudi and explained why plaintiff's illness, ulcerative colitis, did not reach the level of a listed impairment. (*Id.*). Regarding plaintiff's COPD, the ALJ pointed to Dr. Bryan's diagnosis of this condition, but noted that no pulmonary function studies were contained in the file to verify the severity of the disorder. While the ALJ does not question whether plaintiff has these two severe impairments, the record does not support a finding that plaintiff satisfied each of the criteria within listing 3.02 or 5.06. Plaintiff has not referenced any entries in the administrative record which document the criteria required to meet a listed impairment. More importantly, plaintiff has not shown there is a lack of sufficient evidence to support the administrative decision that plaintiff did not have a listed impairment. Since the burden at Step 3 is on plaintiff, the absence of such documentation is fatal to plaintiff's argument.

Plaintiff next argues that no evidence supported the ALJ's determination, other than "a

conclusion based on distrust of the claimant's testimony or personality. Pl.'s Br., ECF 12, at 2-3. To the extent this argument relates to the ALJ's finding that there was no listed impairment, it is harmless error. To the extent this contention is a challenge to the ALJ's credibility determination as it relates to plaintiff's RFC, it is addressed in Part B of this Report and Recommendation.

Plaintiff failed to meet his burden to demonstrate his impairments satisfied the listing at step three. The ALJ's decision finding no listed impairment was supported by substantial evidence throughout the record.

### B. *The ALJ did not properly weigh the medical evidence or plaintiff's testimony.*

Plaintiff asserts the ALJ failed to properly weigh the "uncontroverted medical records of the treating physicians." Pl.'s Br. at 3.

The opinion and diagnosis of a treating physician is generally entitled to considerable weight, and the ALJ has the sole responsibility for resolving the ultimate issue of a claimant's disability status. *Newton v. Apfel*, 209 F. 3d 448, 455 (5th Cir. 2000). When good cause is shown, that is, when a treating physician's statements are "brief and conclusory," or are "not supported by medically acceptable clinical laboratory diagnostic techniques," or when such statements are "otherwise unsupported by the evidence," an ALJ may give "less weight, little weight, or even no weight" to a treating physician's testimony. *Perez v. Barnhart*, 415 F. 3d 457, 465-66 (5th Cir. 2005).

The ALJ has the ultimate responsibility to evaluate plaintiff's RFC based on the record as a whole. *See Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990); 20 C.F.R. § 404.1527 (stating opinions from medical sources that a claimant is "disabled" or "unable to work" are "opinions on issues reserved to the Commissioner because they are administrative findings

dispositive of a case" and are "not treated as medical opinions as described in paragraph (a)(2).").

The ALJ in this case considered the medical evidence of record as evidenced by his citations to the medical evidence. Further, the Court notes the ALJ's decision includes three pages of detailed analysis of the medical records. When the weight of the medical records do not support an opinion of a treating physician, it is within the scope of the ALJ's authority to disregard the treating physician's opinion on plaintiff's ability to work. The ALJ noted that he gave great weight to the records of both Drs. Marupudi and Bryan, but not as much weight to the forms completed by them stating plaintiff was disabled because he found those opinions were not supported by the doctors' actual treatment notes.

Recognizing, as set out above, the authority given the ALJ to be significant, it is not unlimited nor is it unchallengeable. The issue in this case is not whether the ALJ failed to consider the medical evidence and opinions of plaintiff's doctors, but whether he erred in rejecting the opinion of Dr. Marupudi, plaintiff's long standing treating physician. Even if, as defendant argues, the ALJ may have been justified in rejecting Dr. Marupudi's declaration on January 27, 2014 that plaintiff was unable to return to full-time work (Tr. 272), that finding was not the only finding Dr. Marupudi made. On October 20, 2013, Dr. Marupudi made specific findings that plaintiff suffered from uncontrollable diarrhea, and was limited to 2 hours of work, to 60 minutes per day of standing with a maximum of 30 minutes at one time, and that his inflammatory bowel disease was evidenced medically by endoscopy, biopsy or other acceptable imaging or operative findings. Dr. Marupudi also found, in addition to the chronic diarrhea, that plaintiff exhibited bloody stools, nausea, and abdominal pain. (Tr. 269-70). Those findings are not a conclusory statement of disability. Instead, they are supported by Dr. Marupudi's long

history of treatment and by the numerous procedures, including several colonoscopies. If the ALJ rejected Dr. Marupudi's January 27, 2014 declaration of disability without considering all of Dr. Marupudi's other findings and treatment, such was error.

Further, plaintiff's condition of ulcerative colitis is undisputed. The ALJ found plaintiff could not perform the full range of light work because his fecal incontinence required that plaintiff have "access to a restroom at work." (Tr. 17). The ALJ did not, however, set out what access was required. He did not specify whether access meant scheduled or unscheduled access. Further, most workplaces have restroom facilities available. The VE testimony regarding restroom access and plaintiff's frequent bowel movements is not definitive. Since the ALJ used a plural term, it would appear the ALJ determined the frequency is at least somewhere between 2 to 8 episodes per day. The VE did not testify what number, if any, would be tolerated in the work place. In fact, when cross examined by plaintiff's counsel, the VE testified that if plaintiff "had to take unscheduled breaks from the work station due to the need to go to the restroom frequently, he would not be able to maintain a regular work schedule." (Tr. 54). The VE testimony is not adequate and those contradictions and/or ambiguous statements must be resolved on remand.

The ALJ's credibility findings regarding plaintiff should also be addressed on remand. Two reasons were given in reaching an adverse credibility assessment for plaintiff. One was that he continued to smoke. Addiction and/or dependence to nicotine is not a persuasive factor of truthfulness. To the extent it is relevant at all, it is marginally relevant as to credibility. It would be hard to find any smoker who does not understand smoking is unhealthy. Even if you classify the failure to quit smoking as a will power issue, it does not affect credibility.

The other factor the ALJ identified in rejecting plaintiff's testimony was weight gain. The record is clear that plaintiff experienced both weight gain and weight loss. Both of plaintiff's treating doctors were aware of plaintiff's fluctuating weight, but both still considered, even without substantial weight loss, his impairment disabling. The listing, which contains a factor of weight loss, only includes weight loss as one of six factors to be considered. As long as a plaintiff meets two of the six factors he could meet a listing and could do so without evidence of weight loss.

Additionally, the evidence of plaintiff's work history supports his testimony. Up until 2012 he was gainfully employed and even worked with his diagnosis of ulcerative colitis. The fact that his condition did not, according to him, become a disability until 2012 does not establish non-disability. The last five years of employment, at a restaurant, terminated only when his condition of fecal urgency and incontinence became worse and caused him difficulties at work. Plaintiff's testimony was specific on that point. This is not to say plaintiff could not still be found not disabled if jobs were identified that could accommodate his condition. The hypothetical posed to the VE, however, did not adequately include the extent of plaintiff's limitations as established by the evidence. On remand, the accommodation required for any employment should be specific.

## VI.
## RECOMMENDATION

It is the RECOMMENDATION of the undersigned United States Magistrate Judge to the United States District Judge that the decision of the defendant Commissioner finding plaintiff STEVEN MIKE OSBORN not disabled and not entitled to a period of disability benefits be

REVERSED, and the case remanded for further administrative proceedings consistent with this Report and Recommendation.

## VII.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this \_\_\_12th\_\_\_ day of September 2017.

CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).